UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**STEPHEN CRADDOCK,**

    **Petitioner,**

**v.**           **Civil No. 4:22-CV-519-P**

**BOBBY LUMPKIN, Director,**
**TDCJ- CID,**

    **Respondent.**

## OPINION AND ORDER

   Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Stephen Craddock ("Craddock), a state prisoner confined in the Daniel Unit of the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ-CID), against Bobby Lumpkin, director of that division, Respondent. After considering the pleadings and relief sought by Craddock, the Court has concluded that the petition should be dismissed with prejudice as barred by the applicable statute of limitations.

## I. BACKGROUND

   Craddock is in custody pursuant to his March 18, 2016 separate convictions from the 297th District Court of Tarrant County, Texas, in cause number 1443284R for murder, and for aggravated assault with a deadly weapon. SHCR-01 at 86–90[1]; ECF No. 16-1. Craddock entered a guilty plea pursuant to a plea bargain as to both offenses; which includes, signed written plea admonishments and waivers, the trial court's certification reflecting that Craddock would have no right of appeal, and a judicial confession. SHCR-01 at 81–89, 93, ECF No. 16-1. On March 18, 2016, Craddock was sentenced to the agreed twelve years' imprisonment on each count to run concurrently. *Id.* at 86–90. Craddock

---

[1]. SHCR-01" refers to the clerk's record of the state habeas documents in *Ex parte Stephen Craddock*, No. 87,012-01, followed by the relevant page number[s]. "SHCR-02" refers to the clerk's record of the state habeas documents in *Ex parte Stephen Craddock*, No. 87,012-02, followed by the relevant page number[s].

did not file a direct appeal. SHCR-01 at 2 and SHCR-02 at 2 ("Clerks Summary Sheets"), ECF Nos. 16-1 and 16-7.

Craddock filed his first state habeas corpus application on January 25, 2017.[2] He challenged his convictions on three grounds: (1) ineffective assistance of counsel, arguing failure to investigate and coercing him to accept the guilty plea bargain; (2) failure to disclose exculpatory evidence; and (3) insufficient evidence to prove cause of death. SHCR-01 at 7–12, ECF No. 16-1. The trial court obtained a detailed attorney's affidavit responding to Craddock's claims. SHCR-01 at 31–35, ECF No. 16-1. The State provided proposed Findings of Fact and Conclusions of Law with extensive exhibits attached. SHCR-01 at 36–76, ECF No. 16-1. The trial court adopted the State's proposed findings in denying Craddock's first state application. SHCR-01 at 78, ECF No. 16-1. The Texas Court of Criminal Appeals ("TXCCA") denied that application without written order on findings of the trial court without a hearing on July 26, 2017. SHCR-01 ("Action Taken"), ECF No. 16-4.

On March 30, 2022, Craddock filed a second state habeas application.[3] The one ground Craddock raised in that second application was "Newly discovered evidence." SHCR-02 at 21, ECF No.oc. 16-7. Craddock Claimed that he could not have presented evidence supporting the grounds raised when he filed his first application. *Id.* at 19. Craddock alleged that the new evidence he relied on in support of his argument was an April 28, 2021 article in the Fort Worth Star Telegram newspaper. The article reported that there was a resolution introduced

---

2. The state application was signed January 25, 2017, was postmarked January 26, 2017, and was file-stamped in the state district court on January 30, 2017. SHCR-01 at 2, 18–19, 20, ECF No. 16-1. The mailbox rule applies to determine the timeliness of pro se state habeas applications. *Richards v. Thaler*, 710 F.3d 573, 578–79 (5th Cir. 2013). The Court will use the earliest date, January 25, 2017.

3. Craddock's signature declaring the contents of the second state application to be true and correct, was dated March 30, 2022. SHCR-02 at 31, ECF No. 16-7. The application was file-stamped April 5, 2022. SHCR-02 at 16, ECF No. 16-7. Craddock also signed the petition, certifying that he sent his application to the TXCCA on March 30, 2020. SHCR-02 at 33, ECF No. 16-7. Because the file stamp is close in time to the March 30, 2022 signature date and because in Craddock's sole ground for relief, he refers to a news article published in April 2021, the Court adopts the Respondent's position that the March 30, 2022 signature date is the most logical date to use to apply the mailbox rule. SHCR-02 at 21–22; ECF No. 16-7.

to investigate and audit the Tarrant County Medical Examiner due to several mistakes identified in twenty-seven of forty reviewed cases, and a judge's finding that the medical examiner made false, inaccurate, and misleading statements in a death penalty case. SHCR-02 at 20–21, ECF No. 16-7. Craddock did not include a copy of the article with his state application. *Id.* at 16–37. Craddock also referred to the autopsy and police reports in his own case, but he did not attach those documents. *Id.* He alleged the autopsy report incorrectly determined that the victim's death resulted from having been shot in the back, whereas the police report reflected that the victim had been shot in the chest. *Id.* at 25.

The state court adopted the State's proposed Findings of Fact and Conclusions of Law to recommend denial of the second state application. SHCR-02 at 54–63, ECF No. 16-7. That court found in part that Craddock presented no evidence to support his allegations, including his allegation that there was newly discovered evidence. SHCR-02 at 57 nos. 5, 10, ECF No. 16-7. The court also found that Craddock did not explain how the alleged newly discovered newspaper article affects his case. *Id.* at 55 no.6. The court also found that Craddock neither alleged nor proved that the newly discovered evidence established his innocence. *Id.* at 55 no.8, 57 at no.15; ECF No. 16-7. The TXCCA denied relief on June 29, 2022, without written order on findings of the trial court without a hearing and on the Court's independent review of the record. SHCR-02 at 61–62, ECF No. 16-7; and "Action Taken," ECF No. 16-8.

Craddock constructively filed the instant federal petition for relief under 28 U.S.C. § 2254 on or about June 9, 2022.[4] Pet. 10, ECF No. 1. Craddock attached the autopsy report, police report, and the April 28, 2021 article as exhibits to his federal petition. Pet. Exhibits 1-7, ECF No. 1-1.  This proceeding ensued.

## II.    ISSUES

The Court understands Craddock to allege the following four grounds for relief:

> (1) He was denied the effective assistance of counsel when
> counsel failed to properly investigate the murder victim's

---

[4]. A § 2254 petition is also deemed filed on the date that the petition is placed into the prison mail system. *See Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir 1998). Craddock dated the § 2254 petition on June 9, 2022, and thus that is the earliest date for constructive filing of the petition.

cause of death and coerced Craddock to enter a guilty plea;

(2) The State failed to disclose exculpatory evidence;

(3) The evidence was insufficient to prove the victim's cause of death; and

(4) newly discovered evidence.

Pet.6–7, ECF No.1.

## III.    RULE 5 STATEMENT

The Respondent argues that the § 2254 petition in this case is barred by limitations. 28 U.S.C. § 2244(d). The Respondent reserved the right to argue exhaustion and other procedural bars, pending the Court's resolution of the time-bar issue.  28 U.S.C. § 2254(b).

## IV.    ANALYSIS/LIMITATIONS

### A.    Application of the Statute of Limitations

Title 28, United States Code, § 2244(d) imposes a one-year statute of limitations on federal petitions for writ of habeas corpus filed by state prisoners. Section 2244(d) provides:

(d) (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is

4

removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

Because the bulk of Craddock's claims challenge events that arose before his convictions, the Court will first analyze the date the limitations period began to run as "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). Otherwise, the record does not indicate that any unconstitutional "State action" prevented Craddock from filing for federal habeas corpus relief prior to the end of the limitation period. See 28 U.S.C. § 2244(d)(1)(B). Also, Craddock's claims do not concern a constitutional right recognized by the Supreme Court within the last year and made retroactive to cases on collateral review. See 28 U.S.C. § 2244(d)(1)(C). Craddock, however, has also claimed that he is entitled to relief because of "newly discovered evidence" of mistakes by the medical examiner's office. Pet. 4, ECF No. 1. To the extent Craddock contends that he could not have discovered the factual predicate of this claim until a date subsequent to the date his conviction became final under 28 U.S.C. § 2244(d)(1)(D), the Court will address that alternative limitations claim *infra*.

5

**B.      Analysis Based Upon Finality of Judgment under § 2244(d)(1)(A)**

As noted in the Background section, Craddock's judgments of conviction were entered on March 18, 2016. Craddock did not pursue a direct appeal from his convictions. SHCR-01 at 2 ("Clerk's Summary Sheet"), ECF No. 16-1; SHCR-02 at 2 ("Clerk's Summary Sheet"), ECF No. 16-7. Therefore, Craddock's convictions became final on April 18, 2016,[5] when the time to seek direct appeal of his convictions expired. *See* Tex. R. App. P. 26.2(a)(1). Therefore, the one-year limitation period for filing a federal petition expired one year later on April 18, 2017. *See Flanagan v. Johnson*, 154 F.3d 196, 202 (5th Cir. 1998) (holding that Rule 6(a) of the Federal Rules of Civil Procedure applies to the computation of AEDPA's one-year limitation period).  Craddock's § 2254 petition, constructively filed in June 2022, was filed several years too late and should be dismissed with prejudice as time-barred absent any application of statutory or equitable tolling. Pet. 10, ECF No. 1.

1.      Statutory Tolling Under 28 U.S.C. § 2244(d)(2)

AEDPA provides that "the time during which a properly filed application for State post–conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section." 28 U.S.C. § 2244(d)(2). A state habeas application "is 'pending' for AEDPA's tolling purposes on the day it is filed through (and including) the day it is resolved." *Windland v. Quarterman*, 578 F.3d 314, 317 (5th Cir. 2009). Here, Craddock's first state writ application was filed on January 25, 2017, 281 days after his convictions became final, and was denied on July 26, 2017, having tolled the limitations period for 183 days, with 84 days remaining before the limitation period expired. SHCR-01 "Action Taken," ECF No. 16-4. Accordingly, absent any additional tolling, Craddock's one-year limitation period for filing a federal petition was extended to and expired on October 18, 2017.

Craddock's second state habeas application, however, fails to toll the

---

[6].Thirty days after the March 18, 2016 judgments were entered was April 17, 2016. Because that date fell on a Sunday, Craddock's judgments became final on April 18, 2016. *See* Tex. R. App. P. 4.1(a).

AEDPA's limitations period because it was filed at the earliest on March 30, 2022, several years after the limitations period expired. SHCR-02 at 31–33; ECF No. 16-7. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) ("state habeas application did not toll the limitation period under § 2244(d)(2) because it was not filed until after the period of limitation had expired."). Therefore, when Craddock filed this federal petition in June 2022, he did so over four years after his AEDPA one-year limitations period had expired. Pet. 10, ECF No. 1.

 2.    Equitable Tolling

The one-year limitation period for filing a petition under § 2254 is subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645-46 (2010). Equitable tolling should be applied only in "rare and exceptional circumstances." *Felder v. Johnson*, 204 F.3d 168, 170–71 (5th Cir. 2000) (quoting *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998)). More specifically, "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Grooms v. Johnson*, 208 F.3d 488, 489–90 (5th Cir. 1999) (citing *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (*abrogated on other grounds by Causey v. Cain*, 450 F.3d 601, 605 (5th  Cir. 2006)). The petitioner bears the burden to show entitlement to equitable tolling. *See e.g. Phillips v. Donnelly*, 223 F.3d 797, 797 (5th Cir. 2000). Craddock has not attempted to meet his burden to show that he is entitled to equitable tolling.

Moreover, "[i]n order for equitable tolling to apply, the applicant must diligently pursue his § 2254 relief." *Coleman*, 184 F.3d at 403. One component of the obligation to diligently pursue rights is not to squander the one-year grace period. *Johnson v. Quarterman*, 483 F.3d 278, 287–88 (5th Cir. 2007); *see, e.g., Stroman v. Thaler*, 603 F.3d 299, 302-03 (5th Cir. 2010) (finding the fact that petitioner's state habeas application was filed when only five months of the one-year limitation period remained to be among the indicia of petitioner's lack of diligence). Here, Craddock did not pursue his first state habeas application until January 25, 2017, with less than three months remaining before the limitation period expired. SHCR-01 at 18, ECF No. 16-1. Then, Craddock did not seek federal habeas relief immediately after the TXCCA denied relief on his first state writ application.  Instead, Craddock waited at least two years and five months and

7

then filed a second state writ application and waited over four years to then file his federal petition from the date his first state writ was denied. SHCR-02 at 16, 31–33, ECF No.16-7; Pet. 10, ECF No.1. "[E]quity is not intended for those who sleep on their rights." *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir.1999) (citing *Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir. 1989)). Craddock has not explained his delay in filing for habeas relief and has failed to demonstrate that he was diligent in pursuing habeas relief. Because Craddock has not met his burden, he is not entitled to equitable tolling.

### C.      Analysis Based Upon a Later Predicate Date under § 2244(d)(1)(D)

Craddock did not explicitly make an argument that he is entitled to a limitations period triggered by a factual predicate date pursuant to § 2244(d)(1)(D), when prompted to do so in the § 2254 petition form. Pet. 9, ECF No.1. As noted above, § 2244(d)(1)(D) runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Importantly, it does not run from "the date on which the petitioner has in his possession evidence to support his claim." *In re Young*, 789 F.3d 518, 528 (5th Cir. 2015) (citing *Flanagan*, 154 F.3d at 199.

As noted, however, Craddock's fourth ground for relief asserts a claim for newly discovered evidence, identifying a Fort Worth Star Telegram article dated in April 2021 regarding certain actions of the Tarrant County Medical Examiner as such evidence. Pet. 7, ECF No. 1; Pet. Exhibit 6-7, ECF No. 1-1. But newly discovered evidence is not a cognizable free-standing claim for federal habeas relief. None of Craddock's claims are predicated on whether the medical examiner's office made mistakes in other cases. Moreover, the article does not report evidence that mistakes were made in Craddock's case or that any such mistakes were material. To the extent the newspaper article supports any of Craddock's independent claims, the article is at most cumulative evidence. It does not constitute a factual predicate of any of his claims to trigger a limitations period under § 2244(d)(1)(D). And, as analyzed further below, because actual innocence is not a free-standing claim, it would not itself trigger the application of

8

§ 2244(d)(1)(D).

As noted, in the first state writ petition, Craddock argued that the autopsy report mistakenly reflected that the cause of the victim's death was end stage renal failure and not complications of a gunshot wound.  In the § 2254 federal petition, Craddock adds, as he did in his second state writ petition, that the autopsy report incorrectly reflects that the victim was shot in the back instead of the chest as the police report suggests. SHCR-01 at 11, ECF No. 16-1; SHCR-02 at 21–22, ECF No.  16-7; Pet. (exhibits); ECF Nos. 1-1. Craddock claims that although he has still not seen all the discovery in his case, he did buy some of the documents. Pet. at 6, ECF No. 1. Craddock does not say which documents he obtained or on what date.

To the extent that Craddock believes he is entitled to have the limitations period run from the date he obtained a copy of the autopsy and police reports, he confuses "his knowledge of the factual predicate of his claim[s] with the time permitted for gathering evidence in support of th[ose] claim[s]." *Flanagan*, 154 F.3d at 199. Exercising due diligence, Craddock could have discovered the discrepancy between the autopsy and police reports before or shortly after he entered his guilty plea. Furthermore, Craddock's first state writ petition reflects that he was already aware of the autopsy report's contents, and as Craddock does not contend that he was not present during the shooting, he would have personal knowledge of whether the victim was shot in the back or the chest.

In sum, Craddock does not allege a date he discovered the factual predicates of his claims, nor does he provide any argument to substantiate that he exercised due diligence in making such discovery to establish the appropriateness of alternatively calculating his limitations period under § 2244(d)(1)(D). Therefore, Craddock has not shown that he is entitled to a later limitation start date under § 2244(d)(1)(D).

> ### D.  No Facts Support an Actual Innocence Claim under *McQuiggin v. Perkins.*

The Supreme Court has held that the AEDPA statute of limitations can be overcome by a showing of actual innocence. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). To the extent, if any, that Craddock's ground for relief based upon alleged newly discovered evidence is an assertion of actual innocence, he

fails to satisfy the conditions for such relief set forth in *McQuiggin. See* Pet. 1, ECF No. 1; Response 13-20, ECF No. 17.

In *McQuiggin*, the Supreme Court held that tenable claims of actual innocence serve as a gateway through which the petitioner may pass, allowing his underlying constitutional claims to be considered despite being raised outside the AEDPA statute of limitations. 569 U.S. at 386. However, "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298 (1995), and citing *House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met)).

In this context, newly discovered evidence of a petitioner's "[a]ctual innocence" refers to factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623–24 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). "A prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of the crime." *Sawyer*, 505 U.S. at 340. And while diligence is not a discrete requirement, the timing of the federal habeas petition bears on the credibility of the evidence proffered to show actual innocence. *See McQuiggin*, 569 U.S. at 399–400. Ultimately, "[t]he miscarriage of justice exception . . . applies to a severely confined category" of otherwise untimely claims. *Id.* at 395. To successfully open the actual-innocence "gateway", a petitioner must present "'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin*, 569 U.S. at 401 (quoting *Schlup*, 513 U.S. at 316).

Craddock voluntarily and knowingly pleaded guilty to both offenses and signed judicial confessions. SHCR-01 at 43 nos. 53-56, 81–84, ECF No. 16-1. The Fifth Circuit has not yet addressed whether such a guilty plea precludes a petitioner from arguing actual innocence to extend a time period under *McQuiggin*, however, a number of courts in this district have determined a guilty plea likely forecloses *McQuiggin* as a gateway to overcome limitations. *See Garcia v. Director*, No.3:20-CV-1390-N (BT), 2022 WL 17096188, * 3 (N.D.

Tex. Oct. 26, 2022), *rep. and rec. adopted*, 2022 WL 17095923  (N.D. Tex. Nov. 18, 2022) (citing *Thomas v. Stephens*, 4:13-CV-875-A, 2014 WL 929031, at *3 n.3 (N.D. Tex. Mar. 7, 2014) (recognizing split among district courts regarding whether *McQuiggin* applies to a guilty plea case, citing cases, but assuming without deciding that it does apply));  *see also Garrison v. U.S.*, No. 3:16-CR-153-D (2), 2021 WL 2598746, at *3 (N.D. Tex. May 14, 2021), *rep. and rec. adopted*, No. 3:16-CR-153-D(2), 2021 WL 2592549 (N.D. Tex. June 23, 2021) (recognizing split between courts, finding no relief even if *McQuiggin* applies). The Respondent contends that the actual innocence gateway outlined in *McQuiggin* is not available to Craddock because of his judicial confessions and voluntary guilty pleas, and this court agrees that the *McQuiggins* gateway is likely foreclosed.

But even assuming arguendo that *McQuiggin* applies in Craddock's case, he still cannot overcome AEDPA's statute of limitations because he fails to make the necessary showing of actual innocence to successfully open the actual-innocence "gateway." *See McQuiggin*, 569 U.S. at 401. Neither the potential conflict between the autopsy report and the police report, nor the suggestion that the medical examiners have made mistakes in *other* cases rise to the level of convincing, reliable, credible evidence sufficient to demonstrate that it is more likely than not that no reasonable juror would have convicted Craddock of murder and aggravated assault with a deadly weapon in light of the new evidence. *McQuiggin*, 569 U.S. at 399.

In his first state writ application, Craddock challenged the victim's cause of death, arguing that the death was a hospice death, end stage renal failure, and not a homicide caused by a non-fatal one-year old gunshot wound. SHCR-01 at 10-11, ECF No. 16-1. Craddock's trial attorney provided an affidavit indicating that the Tarrant County Medical Examiner found the death to be a homicide. SHCR-01 at 34; ECF No. 16-1 at 37. The attorney questioned and investigated the cause and manner of death. *Id.* In denying Craddock's writ petition, the trial court made numerous findings of fact. SHCR-01 at 36–43, ECF No. 16-1. Relevant to any claim of actual innocence, the state trial court found the following: (1) the evidence in the case included, in part, police reports, autopsy reports, and medical records of the victim from the date that he was shot until he died (SHCR-01 at 38

11

no.10, 39 no.12, ECF No. 16-1); (2)  Dr. Judy Melinek, a pathologist at Stanford University Medical School, reviewed the autopsy report, medical records, and nursing home records and came to the same conclusion as to the cause and manner of death as did the Tarrant County Medical Examiner (SHCR-01 at 39–40 nos. 14, 16–19, 22, 24, ECF No.  16-1); and (3) Kim Littleton, an expert nurse, reviewed the nursing home records and came to the same conclusion as did Dr. Melinek and the Tarrant County Medical Examiner (SHCR-01 at 40 nos. 23, 25, ECF No. 16-1). Upon review of these findings, the TX CCA denied Craddock's state habeas application on the findings of the trial court without a hearing and on the court's independent review of the record. SHCR-01 "Action Taken," ECF No. 16-4.

       In his second state writ application, Craddock's sole ground for relief alleged that newly discovered evidence exists, specifically an article in the Fort Worth Star Telegram newspaper published on April 28, 2021. SHCR-02 at 21–22; ECF No. 16-7.  The state trial court reported that Craddock alleged that "newly discovered evidence exists suggesting that the members of the Tarrant County Medical Examiner's Office had botched autopsies and testified falsely in some cases." SHCR-02 at 55; ECF No. 16-7. In his state writ application, Craddock also made statements regarding his own case. SHCR-02 at 21–22; ECF Doc. 16-7 at 21–22. He referred to the Medical Examiner's Investigation Report as stating the decedent was shot in the back. SHCR-02 at 21, ECF No. 16-7. He described the autopsy report as stating the cause of death was complications of a gunshot to the back. *Id.* at 22.  Craddock also described a police report stating the gunshot wound was to the chest. *Id.* Reviewing these allegations, the state court found that Craddock "alleges that there was a factual conflict between the autopsy report and the police report about where he was shot." SHCR-02 at 55 no.7, ECF No.16-7. The state court went on to find that Craddock did not explain how the new information affects his case, did not allege that it proved his innocence, did not allege that in light of the alleged new evidence no reasonable juror would have convicted him, and presented no evidence to support his allegations. SHCR-02 at 55 nos. 5–10, ECF No. 16-7.  The TXCCA denied Craddock's state habeas petition without written order on the findings of the trial court without a hearing and on the court's independent review of the record. SHCR-02 "Action Taken,"

ECF No.16-8.

       The state court's factual findings "shall be presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Reed v. Stephens*, 739 F.3d 753, 773 n. 8 (5th Cir. 2014) (declining petitioner's suggestion that the Court not apply § 2254(e)(1)'s presumption of correctness to the CCA's review of his actual innocence claim under *Schlup*); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) (presumption of correctness also applies to "those unarticulated findings [including mixed findings of law and fact] which are necessary to the state court's conclusions of mixed law and fact") (citations omitted). Craddock has failed to meet this burden.

       The Respondent contends that Craddock's action of attaching document exhibits to his § 2254 petition that were earlier described in his state writ applications does not transform those documents into newly discovered evidence. Resp. 7, n. 5, ECF No. 17. The alleged facts underlying his newly discovered evidence claims, however, remain the same: that there is a conflict between the autopsy report and the police report as to whether the decedent was shot in the chest or the back, and that there is an article reporting that the Tarrant County Medical Examiner has made mistakes in other cases. SHCR-02 at 21–22, ECF No. 16-7. As recounted herein, even if the attached documents themselves could be considered new evidence, the state court found that two medical experts, contacted by the defense, and after reviewing the medical evidence, reached the same conclusion as the Medical Examiner regarding the manner and cause of death. SHCR-01 at 38 nos.10, at 39–40 nos. 12-19, 22–25, ECF No. 16-1. Thus, Craddock's evidence fails to rise to the level of convincing, reliable, credible evidence sufficient to demonstrate that it is more likely than not that, in light of the new evidence, that no reasonable juror would have convicted Craddock of murder and aggravated assault with a deadly weapon. *McQuiggin*, 569 U.S. at 399.

## V.        CONCLUSION and ORDER

In sum, as Craddock's § 2254 petition is filed beyond the applicable one-year deadline from finality of  judgment, as he has not shown he is entitled to a later limitations start date, as he has not shown that he is entitled to statutory tolling for a sufficient amount of time to make his § 2254 petition timely, as he is not entitled to equitable tolling, and as he has not met the *McQuiggin* standard of factual innocence, the petition under § 2254 must be dismissed with prejudice as barred by the applicable statute of limitations.

It is therefore **ORDERED** that Stephen Craddock's petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DISMISSED** with prejudice as time-barred. Further, pursuant to 28 U.S.C. § 2253(c), for the reasons discussed herein, a certificate of appealability is **DENIED**.

**SO ORDERED** on this **9th day** of **March, 2023.**

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE

14